**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **AMANDA MCCRAY and WILLIAM MICHAEL KRAFT, individually and on behalf of all others similarly situated,**<br><br>    *Plaintiffs*,<br><br><br>    **v.**<br><br>**MCDONALD'S USA, LLC,**<br><br>    *Defendant.* | Case No.:   1:24-cv-11102<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Amanda McCray and William Michael Kraft ("Plaintiffs") bring this Class Action Complaint against Defendant, McDonald's USA, LLC, ("Defendant" or "McDonald's") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.  Plaintiffs brings this class action lawsuit on behalf of themselves, and all others similarly situated who purchased McDonald's Quarter Pounder Products (collectively herein "the Products").

2.  Unfortunately, the Products are unfit for their intended consumption because they are contaminated with the harmful bacteria, E. coli.

3.  Plaintiffs became ill following consumption of the Products.

4.      On October 22, 2024, Defendant began investigating the Products due to possible E. coli outbreak.[1]

5.      Most people in the outbreak reported eating the Quarter Pounder hamburger at McDonald's before becoming sick.[2]

6.      The Center for Disease Control has stated that E. coli are germs called bacteria. They are found in many places, including in the environment, foods, water, and the intestines of people and animals.[3] Some *E. coli* can make people sick with diarrhea, urinary tract infections, pneumonia, sepsis, and other illnesses. The infection is "most likely to sicken pregnant women and their newborns, adults aged 65 or older, and people with weakened immune systems."[4]

7.      Symptoms begin anywhere from a few days after consuming contaminated food or up to nine days later. Symptoms include severe stomach cramps, diarrhea, fever, nausea, and/or vomiting. Some infections can cause severe bloody diarrhea and lead to life-threatening conditions, such as a type of kidney failure called hemolytic uremic syndrome (HUS), or the development of high blood pressure, chronic kidney disease, and neurologic problems.[5]

8.      The Products were formulated, designed, manufactured, advertised, sold, and distributed by Defendant or its agents, to consumers, including Plaintiffs, across parts of the United States.

9.      Each of the products was manufactured by Defendant, distributed to other locations and then sold to consumers across parts of the United States.

---

[1] https://www.cdc.gov/ecoli/outbreaks/e-coli-O157.html
[2] *Id.*
[3] https://www.cdc.gov/ecoli/about/index.html
[4] *Id.*
[5] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-e-coli-o157h7-mcdonalds-quarter-pounders-october-2024

10.     Through marketing and sale, Defendant represented that the Products are safe for people, including pregnant women and their newborns, adults aged 65 or older, and people with weakened immune systems.

11.     Plaintiffs and consumers do not know, and did not have a reason to know, that the Products purchased were contaminated with E. coli. Consumers expect the food they purchase to be safe for consumption and not contaminated by harmful bacteria, which can cause a serious infection.

12.     Other manufacturers formulate, produce, and sell non-harmful foods including cheeseburgers or hamburgers, which is evidence that the risk inherent with Defendant's Products is demonstrably avoidable.

13.     Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

14.     At the time of their purchases, Defendant didn't notify Plaintiffs, and similarly situated consumers, of the Product's risk of E. coli through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal laws.

15.     Plaintiffs purchased the Products, without knowing that Products could infect those who consumed the products, thus causing serious harm to those who use such Products.

16.     Because Plaintiffs were injured by the Products and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

17.     As a result of the above losses, Plaintiffs seek damages and equitable remedies.

**PARTIES**

18. Plaintiff Amanda McCray is a resident and citizen of Chicago, Illinois.

19. Plaintiff William Michael Kraft is a resident and citizen of Davie, Florida.

20. Defendant McDonald's USA, LLC is incorporated in Delaware with its principal place of business in Chicago, Illinois. Defendant specializes in the manufacture and marketing of processed foods sold in fast food restaurants across the United States and abroad

21. Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products, and the claims alleged herein was primarily carried out at Defendant's headquarters and facilities within Chicago, Illinois.

## JURISDICTION AND VENUE

22. This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Defendant are citizens of different states.

23. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

24. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to the laws, rights, and benefits of the State of Illinois. Defendant is incorporated in Delaware and maintains its principal place of business in this judicial District.

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because many Class Members reside in the Northern District of Illinois, and throughout the state of Illinois. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district. Moreover, Defendant maintains its principal place of business in this district.

## FACTUAL ALLEGATIONS

26.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

27.     Plaintiff Amanda McCray bought a McDonald's Quarter Pounder for herself on or about October 17, 2024.

28.     On or about October 20, 2024, Plaintiff Amanda McCray began experiencing many of the symptoms associated with E. coli infection.

29.     Similarly, on or about October 1, 2024, Plaintiff William Michael Kraft purchased a McDonald's Quarter Pounder.

30.     Soon after, he began to experience many of the symptoms associated with E. coli infection.

31.     Nowhere on the Products' packaging or webpage did Defendant disclose that the Products could present a risk of E. coli contamination.

32.     If Plaintiffs had been aware of the E. coli contamination in the Products, they would not have purchased the Products.

33.     As a result of Defendant's actions, Plaintiffs have incurred damages.

34.     If the Products and packaging were reformulated to be safe and avoid risk of bacterial contamination due to E. coli, Plaintiffs would consider purchasing the Products again in the future.

35.     On October 22, 2024, Defendant began investigating the Products due to possible E. coli contamination.[6] 75 cases, 22 hospitalizations and 1 death have been reported as a result of the E. coli outbreak attributable to Defendant.

**Defendant's Misrepresentations and Omissions are Actionable**

---

[6] https://www.cdc.gov/ecoli/outbreaks/e-coli-O157.html

36.     Plaintiffs bargained for Products that were safe to consume. Defendant's Products were, and still are, unsafe to consume due to the risk of E. coli.

37.     Nowhere in the packaging of the Products did Defendant disclose that the products could contaminate the consumers with E. coli.

38.     No reasonable consumer would expect the Products to be contaminated with E. Coli. Accordingly, Plaintiffs and similarly situated consumers were injured as a result of purchasing the Products, including, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant; they were deprived of the benefit of their bargain; they spent money on a product that did not have any value or had less value than warranted; and they would not have purchased and consumed had they known the truth about the products.

39.     Additionally, because the facts concern a safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiffs and consumers the true nature of the Product and to disclose the Product was contaminated with E. coli.  Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product.

40.     Plaintiffs seek to recover damages because the Products are adulterated, worthless, and unfit for safe human use due to the bacteria contained within the Products.

41.     Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of E. coli contamination affecting the Products.

## **CLASS ACTION ALLEGATIONS**

42.     Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and or 23(c)(4), individually, and as the Class representatives on behalf of the following:

> **Nationwide Class:** All persons within the United States who purchased McDonald's Quarter Pounders contaminated with E. coli.

43.     The Nationwide Class shall collectively be referred to herein as the "Class."

44.     Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

45.     Excluded from the Class is governmental entities, Defendant, its officers, directors, affiliates, legal representatives, and employees.

46.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

47.     **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Class numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

48.     **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Class that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

    a.  Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale the Products;

b.  Whether Defendant sold the contaminated Products, that were unreasonably dangerous to consumers such as Plaintiffs and members of the Class;

c.  Whether Defendant failed to adequately warn Plaintiffs and the Class of the dangers with respect to the contaminated Products;

d.  Whether Defendant was negligent for failure to warn;

e.  Whether Plaintiffs and the Class suffered Damages as a result of the contaminated Products;

f.  Whether Defendant was negligent for failure to test;

g.  Whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Defendant's Products;

h.  Whether Defendant made representations regarding the safety of the Products;

i.  Whether Defendant omitted material information regarding the safety of the Products;

j.  Whether Defendant's Products were merchantable;

k.  Whether Defendant violated the consumer protection statutes invoked herein;

l.  Whether Defendant's conduct alleged herein was fraudulent; and

m.  Whether Defendant was unjustly enriched by sales of the Products.

49.     The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiffs' claims.

50.     **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Class in that the Class members uniformly purchased Defendant's Products and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

8

51.     **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

52.     **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Class because they are members of the Class, and their interests do not conflict with the interests of the Class that they seek to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and undersigned counsel.

53.     **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

54.      **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members as described below, with respect to the members of the Class as a whole. In particular, Plaintiffs seek to certify the Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction tha.t the Products confer the advertised benefits and are otherwise safe to use as intended

55.      Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant;

b.   The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment

56.      Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

57.     Plaintiffs, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were no gifts or donations but were given in exchange for the Products.

58.     Defendant voluntarily accepted and retained these benefits.

59.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products unfit for human consumption, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

60.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs, and the other members of the Class, because Plaintiffs, and members of the Class, purchased mislabeled products that were not what Plaintiffs and the Class bargained for and were not safe and effective, as claimed.

61.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Class, because they would have not purchased the Products had they known the true facts.

62.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

**COUNT II**
**Breach of Express Warranty**

63. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

64. Plaintiffs, and each member of the Class, formed a contract with Defendant at the time they purchased the Products.

65. The terms of the contract include the promises and affirmations of fact, that the products were safe to consume, made by Defendant on the Products' packaging and through marketing and advertising.

66. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Class and Defendant.

67. As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe to consume by people of all ages and genders.

68. Plaintiffs and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

69. Defendant breached express warranties relating to the Products and their qualities because Defendant's Products possessed the capability to contaminate the consumers with E. coli at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

70. Plaintiffs and each of the members of the Class would not have purchased the Products had they known the true nature of the risk of the Products contaminating those who consumed the Products.

71.     As a result of Defendant's breach of warranty, Plaintiffs and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT III**
**Breach of Implied Warranty**

72.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

73.     Defendant is engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

74.     The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

75.     Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiffs and Class Members.

76.     However, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

77.     Defendant has provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

78.    Had Plaintiffs, Class Members, and the consuming public known that the Products could contaminate them and cause harm, they would not have purchased the Products or would have paid less for them.

79.    As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### COUNT IV
**Breach of Implied Warranty of Merchantability**

80.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

81.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

82.    There was a sale of goods from Defendant to Plaintiffs and the Class.

83.    As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiffs and the Class that its Products were fit for their intended purpose in that they would be safe for Plaintiffs and the Class to consume. Contrary to these representations and warranties, the Products were not fit for their ordinary consumption, and did not conform to Defendant's affirmations of fact and promises included with the packaging.

84.    The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which such Products are consumed and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiffs and the Class Members.

85.     Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably safe for consumption Products because the Products have a risk of contaminating the consumer with E. coli. Therefore, the Products are not fit for their particular purpose.

86.     Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiffs and the Class a product that Defendant knew would expose Plaintiffs and the Class to health risks, thus meaning Defendant knew that the Products were not fit for their intended consumption as safe to consume Products.

87.     Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by risk of E. coli contamination that can result from the consumption of their Products.

88.     Plaintiffs and the Class did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

89.     Plaintiffs and members of the Class are the intended beneficiaries of Defendant's implied warranties.

90.     The Products were not altered by Plaintiffs or the members of the Classes.

91.     Plaintiffs and members of the Class consumed the Products in the ordinary way such Products were intended to be consumed.

92.     The Products were defective when they left the exclusive control of Defendant.

93.     The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to consume Products, and Plaintiffs and members of the Class did not receive the goods that they bargained for.

94.     Plaintiffs and members of the Class purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

95.     As a result of the defect in the Products, Plaintiffs and members of the Class have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

96.     Defendant breached the implied warranty of merchantability to the Plaintiffs and Class members.

97.     Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

98.     Plaintiffs and Class members have been damaged by Defendant's breach of the implied warranties.

99.     Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relied, as well as costs and attorneys' fees, available under law.

## COUNT V
### Fraudulent Concealment

100.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.     Defendant aimed to portray the Product as safe for frequent and repeated consumption and omitted key facts concerning the potential harm from contamination due to E. coli.

102.     Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiffs and Class Members.

103.     Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the Products. Defendant owed Plaintiffs and Class Members a duty to disclose because the risks associated with E. coli contaminated products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Products contained a bacteria known to have adverse health effects.

104.     Defendant willfully and knowingly omitted material information regarding the quality and safety of the Products as discussed herein.  Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued consumption of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

105.     During this time, Plaintiffs, and members of the Classes, were using the Products without knowing the Products could contaminate them due to the E. coli bacteria found in them.

106.    Defendant failed to discharge its duty to disclose these materials facts.

107.    Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

108.    Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiffs and Class Members, away from purchasing a competitor's product.

109.    Plaintiffs and the Class reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of contamination due to E. coli.

110.    As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs, and the Class, suffered damages in the amount of monies paid for the defective Products.

111.    Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiffs and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT VI

### Strict Liability- Failure to Warn

112.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

113.    Defendant had a duty to warn Plaintiffs and the Class members regarding the Defect, that being risk of contamination due to E Coli, with the Products.

114.    Defendant, which is engaged in the business of selling, manufacturing and supplying the Products placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Products.

115.    The Products supplied to Plaintiffs and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and they reached the consumer of the Products, including Plaintiffs and Class Members, without substantial alteration in the condition in which they were sold.

116.    Defendant was in a superior position to know of the Defect, yet as outlined above, chose to do nothing when the defect became known to them.

117.    Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

118.    Defendant had information regarding the true risks but failed to warn Plaintiffs and members of the Class to strengthen their warnings.

119.    Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

120.    Plaintiffs and members of the Class would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

121.    This Defect proximately caused Plaintiffs and Class members' damages.

122.    The Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

<u>**COUNT VII**</u>
**Strict Liability- Design and Formulation Defect**

123.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

124.    The design and formulation of the Products was defective and unreasonably dangerous.

125.    The risk of bacterial contamination contained within the Products creates unreasonable danger.

126.    The design and formulation of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

127.    The risk of bacterial contamination contained within the Products outweighed the benefits and rendered the Products unreasonably dangerous.

128.    Defendant's Products were defective because the design and formulation of the Products included E. coli.  After Defendant knew or should have known of the risk of injury from the E. coli found in the Products, Defendant continued to promote the Products as safe and effective to the Plaintiffs, Class Members, and public.

129.    There are other Products that do not pose the risk of contamination due to E coli, meaning that there were other means of production available to Defendant.

130.    The Products were unreasonably unsafe, and the Products should not have been sold in the market.

131.    The Products did not perform as an ordinary consumer would expect.

132.    The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

133.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT VIII
### Negligent Failure to Warn

134.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

135.    Defendant owed Plaintiffs and Class members a duty of care and to warn of any risks associated with the Products.

136.    Defendant knew or should have known of the defect but failed to warn Plaintiffs and members of the Classes.

137.    Plaintiffs had no way of knowing of the Products' latent defect.

138.    Defendant's failure to warn caused Plaintiffs and Class members economic damages and injuries in the form of lost value due to risk of contamination due to E. coli exposure.

139.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT IX
### Negligent Design & Formulation Defect

140.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

141.    Defendant owed Plaintiffs and the Class a duty to design and formulate the Products in a reasonable manner.

142. The design and formulation of the Products was defective and unreasonably dangerous, causing exposure to a material with harmful effects. Thus, the Products are now worthless.

143. The design and formulation of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

144. There are other Products that do not contaminate the consumers with E. coli.

145. The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

146. The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

147. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT X
### Negligence

148. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

149. Defendant owed a duty to consumers to produce a product that was safe for its intended consumption.

150. Defendant breached this duty by producing a product that was dangerous for its intended consumption. Defendant knew or should have known that E. coli contaminated Products would cause injuries once exposed to humans and thus be worthless as a safe-to-consume Product

151. As a direct result of this breach, Plaintiffs suffered injury in that Plaintiffs have been deprived of their benefit of the bargain. Plaintiffs' injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiffs would not have been injured.

152. Further, Plaintiffs' injuries were proximately caused by Defendant's breach. It is foreseeable that poorly designed and formulated Products containing E. coli would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased dangerous Products.

153. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT XI
## MEDICAL MONITORING

154. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

155. Plaintiffs and the Class Members have been exposed to the harmful bacteria E. coli.

156. Plaintiffs and the Class were exposed to this harmful bacterium, as a direct and proximate result of Defendant's tortious actions, including Defendant's negligent and willful and wanton conduct as alleged herein.

157. As a proximate result of their exposure to this harmful bacterium, Plaintiffs and the Class have a significantly increased risk of developing future health complications. This increased risk makes periodic diagnostic medical examinations reasonably necessary.

158. This increased risk would warrant a reasonable physician to order monitoring.

159. Early diagnosis of these health conditions has significant value for Plaintiffs and

the Class Members because such diagnoses will help them monitor and minimize the harm therefrom.

160.    Monitoring procedures exist that make early detection of these health complications possible and beneficial. These monitoring procedures are reasonably necessary as a direct and proximate result of Plaintiffs' and the Class Members' exposures to the harmful bacteria, as a result of Defendant's actions as alleged herein.

161.    As a direct and proximate result of Plaintiffs' and the Class Members' exposure to the harmful bacteria, surveillance in the form of periodic medical examinations is reasonable and necessary, because such surveillance will provide early detection and diagnosis of harmful and debilitating injuries potentially resulting from exposure to E. coli and, as a remedy for the conduct alleged.

162.    As a result, Plaintiffs and the Class should be awarded the quantifiable costs of such a monitoring regime.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class, alleged herein, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representative for the Class and Plaintiffs' attorney as Class Counsel;

b.  For an order declaring the Defendant's conduct violates the causes of action referenced herein;

c.  For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For quantifiable costs of medical monitoring;

f.  For prejudgment interest on all amounts awarded;

g.  For an order of restitution and all other forms of equitable monetary relief;

h.  For injunctive relief as pleaded or as the Court may deem proper; and

i.  For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

j.  Such other relief as this Court deems just and proper.


Dated: October 29, 2024

Respectfully submitted,

*/s/ Roy T. Willey, IV*
Roy T. Willey, IV
Paul J. Doolittle *(Pro Hac Vice Forthcoming)*
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Fax: 843-494-5536
Email: roy@poulinwilley.com
pauldoolittle@poulinwilley.com
cmad@poulinwilley.com


*Attorney for Plaintiffs*